E. W. PHELPS, *et al.*, v. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

GARNISHEE; *Extent of Liability.* Garnishee proceedings reach only to those debts which, whether due or not, are owing by the garnishee to the debtor at the time of the service of the garnishee process; and where after the service of such process new and independent contracts are entered into between the garnishee and the debtor, out of which arise liabilities from the former to the latter, such liabilities, although fixed before the answer day, are not within the scope of or affected by the prior garnishee process.

*Error from Shawnee District Court.*

ACTION between *Phelps* and two others, plaintiffs, and the *Railroad Company*, defendant, in certain garnishee proceedings. Trial at the January Term, 1882, of the district court, and judgment for defendant. The plaintiffs bring the case here. The facts appear in the opinion.

*Webb & Sowers*, for plaintiffs in error.

*Geo. R. Peck*, and *W. C. Campbell*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The only question in this case is, the extent of the liability of a garnishee. The cause was tried in the court below on an agreed statement of facts. From that agreed statement it appears that on the 14th day of January, 1881, plaintiffs commenced an action before W. R. Hazen, a justice of the peace, against one Clarence Bryant, to recover the sum of $113.17, and on that day caused a garnishee summons in said cause to be served on the defendant, returnable on the 25th day of January, 1881. On the 25th day of January, 1881, they recovered a judgment against Bryant in said action for the sum sued for. On the 14th day of January, the day of the service of the garnishee summons, the defendant was indebted to Bryant in the sum of $28.84, for labor theretofore performed. For a long time prior to said 14th day of January, Bryant had been in the employ of the defendant at and for the agreed compensation of $70 a month, payable at the expiration of each month. On said 14th day of January after the service of the garnishee summons, the defendant discharged Bryant from its employ and immediately thereafter reëmployed him at and for the agreed compensation of $70 a month — payable in advance, said employment to commence on the 15th day of January; and on the 15th day of January defendant paid him the sum of $70 for one month's labor. Bryant continued in the employ of the defendant for the months following, and the single question is, whether said garnishee proceedings bound the defendant for any moneys paid to Bryant, or any liabilities incurred to him after the service of the garnishee summons and the discharge of ·Bryant from its employ. The district court, to which the case was taken from the justice of the peace, held that it did not; and from that ruling the plaintiffs come to this court.

The amount in controversy in this case is small, but the question is of some importance, and is not free from difficulty. A first reading of the statute seems to sustain the plaintiffs' claim, and yet a careful consideration of the principles which

underlie proceedings in garnishment at least throws great doubt upon the question. We quote such portions of the statute (Justices' Act, ch. 81, Comp. Laws 1879) as seem to bear directly upon the question:

"SEC. 39. The garnishee shall appear before the justice, in accordance with the command of the notice, and shall answer, under oath, all questions put to him touching the property of every description and credits of the defendant, in his possession or under his control; and he shall disclose truly the amount owing by him to the defendant, whether due or not; and in the case of a corporation, any stock therein held by or for the benefit of the defendant, at or after the service of the notice."

"SEC. 42. If the garnishee appear and answer, and it is discovered on his examination that at or after the service of the order of attachment and notice upon him he was possessed of any property of the defendant, or was indebted to him, the justice may order the delivery of such property, and the payment of the amount owing by the garnishee into court, or may permit the garnishee to retain the property or the amount owing, upon the execution of an undertaking to the plaintiff, by one or more sufficient sureties, to the effect that the amount shall be paid or the property forthcoming, as the court may direct.

"SEC. 43. If the garnishee fails to appear and answer, or if he appears and answers, and his disclosure is not satisfactory to the plaintiff, or if he fails to comply with the order of the justice to deliver the property and pay the money owing into court, or give the undertaking required in the preceding section, the plaintiff may proceed against him in an action, in his own name, as in other cases; and thereupon such proceedings may be had as in other actions, and judgment may be rendered in favor of the plaintiff for the amount of the property and credits of every kind, of the defendant in the possession of the garnishee, and for what shall appear to be owing by him to the defendant, and for the costs of the proceedings against the garnishee."

"SEC. 51. An order of attachment binds the property attached from the time of service, and the garnishee shall stand liable to the plaintiff in attachment for all property, moneys and credits in his hands, or due to him from the defendant, from the time he is served with the written notice mentioned in section thirty-seven."

The provisions of the code of civil procedure in reference to garnishment proceedings in the district court are substantially the same.

Now counsel for plaintiffs say that from the answer it appears, not merely that the defendant was indebted to Bryant at the time of the garnishment summons in the sum of $28.84, but also that after such service and before the answer day it became indebted to him in the further sum of $70, and that by the plain language of § 42 the defendant was liable to the plaintiffs for such after-accruing indebtedness; while on the other hand, defendant contends that the liability of the defendant is fixed at the time of the service of the garnishee process, that such garnishee proceedings amount to no more than an assignment of the debtor's then existing claim against the garnishee, and did not reach to or affect any subsequent transactions, contracts and liabilities between it and the debtor. It is obvious that this question of the garnishee's liability for an indebtedness may arise in at least four distinct cases: *First,* Where the indebtedness is owing and already due and founded upon a consideration theretofore fully paid, as for work already done or for goods already sold and delivered. *Second,* Where the consideration has theretofore been fully paid, but the indebtedness, though existing, is by the terms of the contract between the parties, not yet due. *Third,* Where the contract for the indebtedness has been previously made, but the consideration therefor has been only partially paid and discharged, as where a contract has been made for the performance of work which has been only partially performed. And *Fourth,* Where at the time of the service there is no indebtedness, and no contract providing for any, but intermediate the time of the service and the time of the answer an independent contract is made and an original indebtedness created. As to the first two classes of cases, there can be no question as to the liability of the garnishee. As to the third, none as to the liability of the garnishee for the amount which would be owing to the debtor if immediately he stopped further performance and discharge of the

consideration; but perhaps some doubt as to his liability for the additional amount due upon a subsequent payment and discharge by the debtor of the remaining portion of the consideration. The fourth case is the one at bar. For the present, laying aside all question of fraud, which will be considered hereafter, the case stands precisely as if at the time of the service of the garnishee process this defendant was not indebted to the debtor, and was under no contract and had no engagement with him. And the question is, whether the garnishee process will bind the defendant as to contracts entered into and liabilities incurred subsequent to the service of the garnishee process. With some hesitation, we are constrained to answer this question in the negative. The general theory and doctrine of garnishment is, that the garnishee is to be protected against all unnecessary vexation, and that the garnishee proceedings amount to no more than a substitution of the plaintiff for the defendant debtor in the enforcement of any liability against the garnishee. It was said by this court, in the case of the *Board of Education v. Scoville*, 13 Kas. 32, that: "Neither of said orders is a judgment. The making of them is not an adjudication between the parties. It does not determine their ultimate rights. It simply gives to the creditor the same right to enforce the payment of the money from the garnishee that the debtor previously had. It is in effect only an assignment of the claim from the debtor to the creditor. The creditor gains no more or greater rights than the debtor had, and the garnishee loses no rights." Drake, in his work on Attachments, § 458, also states the general doctrine in this language: "A fundamental doctrine of garnishment is, that the plaintiff does not acquire any greater rights against the garnishee than the defendant himself possesses." And again, in § 463, he says: "It will be found on examination, that whatever else may under particular statutes authorize his being charged, there are two comprehensive grounds common to every attachment system, viz.: 1. His possession when garnished, of personal property of defendant, capable of being seized and sold on execution;

and, 2. His liability *ex contractu* to the defendant whereby the latter *has at the time of the garnishment a cause of action, present or future, against him."*

Most of the sections of the statute seem to recognize and enforce this general doctrine. Thus the preliminary affidavit in ordinary garnishee cases, § 37, must read: "Has property of the defendant (describing the same) or credits in his possession, or *is indebted to him."* While § 54a, under which this affidavit was filed, requires that it show: "That such person or corporation *is anywise indebted* to the principal defendant, whether such indebtedness be due or not." That is, the affidavit upon which all garnishee proceedings rest must show a subsisting and present indebtedness, and is not sufficient if it alleges that the parties in the future are to enter into a contract and to then create an indebtedness. Obviously, this contemplates simply a seizure and an appropriation of a present indebtedness, and not a reaching out for the seizure of a non-existing but expected liability in the future. Sec. 51, properly read, as we think, harmonizes with this view. It attempts to define the time at which the process is effective. An attachment "binds the property from the time of service," and the garnishee is liable "from the time he is served." That does not mean that he is liable for any debts that may be due from him to the defendant at any time after the service, but that he is liable from the time of service for any debts that may be then due from him. Sec. 39, which provides what his answer shall contain, requires that he shall disclose truly the amount owing by him to the defendant, whether due or not. Now if this section was the only one, it might refer to the time of the answer or to the time of service of process; but as the general doctrine in all litigation is that rights are to be determined as they existed at the time jurisdiction attaches rather than at the time the evidence of such rights is furnished, and in view also of the language of the affidavits upon which these garnishee proceedings were founded, it would seem that this language should be understood as referring to a disclosure of the amount due at the

time jurisdiction attaches by the service of the garnishee process. The same reasoning which under this language would make the garnishee liable for all debts up to the time of answer, would under § 43 make it liable for all debts up to the time of the judgment against it in cases where it failed to answer, or its answer was, as in this case, not satisfactory. The language of § 42, it may be conceded, is broader, and apparently extends to indebtedness existing at or after the time of service; but we are constrained to think that this language is limited to and controlled by the language of the other sections referred to. The case of *Martin v. Gayle*, 2 Disney, p. 86, though only the decision of an inferior court, is exactly in point and upon the same section. It is true the court in that case did not finally decide as to the liability of the garnishee, but simply declined to enforce that liability upon a summary application. Speaking, however, of this section, it says: "What operation, then, it may be asked, can be given to the words 'or after,' in § 217 of the code? It is sufficient to say that a reasonable effect may be given by supposing that they were intended to embrace the case of debts not payable until after service of the notice. '*Debitum in præsenti, solvendum in futuro.*' This, in view of an order of payment, was material. The answer might show a debt due, but not payable. The order might be made after it became payable."

See also the case of *Nash v. Gale*, 2 Minn. 310; *Davenport v. Swan*, 9 Humph. 186; and *Case Threshing Machine Co. v. Miracle*, Sup. Ct. Wis., decided February 7, 1882, and reported in 14 Cent. L. J., p. 278. In the case from 9 Humphrey, it appears that after the service of garnishee process the garnishee purchased from the defendant a horse, but the debt thus created was held not subject to the garnishment. The cases cited by the plaintiff are with one exception none of them in point. They are all cases in which the liability was existing at the time of the service of the garnishee process, although in some of them the money was not due until some time thereafter. The case of *Silverwood v. Bellas*, 8 Watts, 420, seems to be an authority sustaining the plaintiffs' claim. In that

case, three years after service of the garnishee process, money came into the hands of the garnishee belonging to the judgment debtor, and the liability was enforced. The court, however, rests its decision upon the particular statutes of that state, which they say are the same as under the custom of London, from which the acts were borrowed. Referring to the act of 1705, the court says: "It enacts that if the garnishee plead he had no goods or effects in his hands at the time of the attachment, or *at any time after*, and the plaintiff prove the contrary, the jury shall find for the plaintiff." It also holds that under the act of 1789 the garnishee may be compelled to answer interrogatories touching the goods and moneys of the defendant in his possession or due and owing at the time of the service of such writ of attachment, or at any other time. Whether this decision were correct or not under the statutes of Pennsylvania, we need not stop to inquire; but the case impresses us forcibly with the impropriety of enforcing such a doctrine under our statutes. The idea of holding a garnishee liable for moneys coming into his hands three years after the service of garnishee process, seems abhorrent to our notions of the duty of a prompt disposition and adjustment of the rights of litigants. And yet if the doctrine contended for by the plaintiffs be correct, the same result might follow in this state. Garnishee proceedings are authorized after as well as before judgment, (§§ 155, 156,) and from § 37 it would seem that where the garnishee is a corporation, answer day might be indefinitely postponed. Can it be that a party's contracts with a corporation, whether for the sale of property or the performance of labor, can be so tied up by the service of garnishee process that the consideration of those contracts, the payments for the property or the labor, must for an indefinite time be appropriated to the payment of a single garnishee creditor? We may also remark here without enlarging to any extent, that the construction claimed by plaintiffs would tend to prevent dealings of any kind between the debtor and other parties. By serving a few garnishee notices the future earnings of a debtor might be wholly seized for the payment of

his debts, leaving him nothing for personal support. In that way a laborer, however skillful, and however valuable his services, might practically be driven from a community. Here we may refer to the question of fraud, alleged in the discharge of Bryant and his immediate reëmployment under a stipulation for advance payment. This it is true may have been simply a trick to defeat the action of the creditor, but it is not necessarily so. It may be that Bryant would work under no other conditions, and his services may have been of such a character as to be absolutely necessary to the defendant. In such case it could not be affirmed that the proceedings were a fraud upon the rights of the plaintiffs. The mere fact of the abrogation of one and the making of a new contract is not of itself a fraud upon the rights of the plaintiffs. Clearly it is no fraud if the plaintiffs' rights extended only to the time of the service of the garnishee process. These considerations lead us to the conclusion that the construction placed by the district court upon the liability of the defendant is correct, and its judgment must therefore be affirmed.

Counsel for defendant in error also suggest that by the terms of the new contract no debt was created. They argue that if the company had refused to pay on the 15th day of January, it would not have been indebted, but only liable for damages on account of a breach of contract; and on the other hand, that if Bryant refused to work, it would be owing him nothing by virtue of its contract, or if it had paid Bryant, he would be indebted to it. In other words, they claim that this contract created not a certain debt payable in the future, but only a contingent liability, which is not the subject of garnishment; but in the view of the case that we have already taken, it is unnecessary to consider whether this be correct or not.

The judgment of the district court will be affirmed.

All the Justices concurring.